UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DENZIL BELL,

        Plaintiff,

v.

SARAH SCHROEDER, et al.,

        Defendants.
_____/

Case No. 2:23-cv-00071

Hon. Hala Y. Jarbou
Chief U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment due to Plaintiff's failure to exhaust his administrative remedies. (ECF No. 24.)

State Prisoner Denzil Bell, represented by counsel, filed this complaint asserting an Eighth Amendment violation pursuant to 42 U.S.C. § 1983, and a state law gross negligence violation. (ECF No. 1.) Bell sues Defendants Warden Schroeder, Corrections Officer (CO) Becks, CO Salo, CO Aaron, CO Fielding, CO Dementer, CO Brennan, and Assistant Deputy Warden (ADW) Schram. Bell says that while he was incarcerated at the Alger Correctional Facility, he shared a cell with prisoner Edwards. Bell says that he requested a move to a different cell because he could not get along with Edwards. (*Id.*, PageID.6.) Bell says that he broke his hand in a fight with Edwards on May 4, 2020. (*Id.*) Bell says that he sent numerous written requests

(kites) and made oral statements regarding his risk of harm from his cellmate Edwards. (*Id.*) Despite his requests to move to a new cell, he was not moved away from Edwards.

In his complaint, Bell says that on May 31, 2020, he was awakened by Edwards after Edwards began striking him with a sock with a padlock inside. Bell says he awoke to find that he was tied to his bed frame, and that Edwards had cut, burned, and mutilated him with improvised weapons. Bell says he was able to untie himself and fight back until members of the prison staff had responded.

Defendants argue that the two grievances that Bell submitted were not properly exhausted because they were rejected in accordance with policy and failed to name each Defendant.

Bell filed grievance LMF-20-06-0676-28e against Defendants CO Salo, Warden Shroeder, CO Aaron, and CO Dementer. Defendants argue that the grievance was properly rejected for being untimely at Step I. In the opinion of the undersigned, a genuine issue of material fact exists regarding whether grievance LMF-20-06-0676-28e was properly rejected as untimely by the MDOC. However, no genuine issue of fact exists regarding whether Bell properly exhausted any claim asserted in his complaint against Defendants Becks, Fielding, Brennan, and Schram. The record before the Court indicates that Bell did not exhaust his claims against these defendants.

Bell filed grievance LMF-20-06-0677-27b raising the issue that emergency call buttons were not in the cells. That grievance was rejected as presenting a non-

grievable issue. Nevertheless, Bell has not asserted that Defendants violated his rights by failing to include emergency call buttons in the prison cells at Alger Correctional Facility. Although Bell did not need to exhaust this issue through the grievance process, he did not assert in his complaint that Defendants failed to provide emergency call buttons in the prison cells.

In the opinion of the undersigned, Defendants Becks, Fielding, Brennan, and Schram have met their burden of showing that they are entitled to summary judgment because no genuine issue of fact exists due to Bell's failure to properly exhaust his administrative remedies against them. Conversely, genuine issues of material fact exist regarding whether the MDOC properly rejected grievance <u>LMF-20-06-0676-28e</u> against Defendants Salo, Shroeder, Aaron, and Dementer.

Accordingly, it is recommended that the Court grant the motion in part and deny the motion in part by dismissing without prejudice Defendants Becks, Fielding, Brennan, and Schram, and allowing Bell's complaint to proceed against Defendants Salo, Shroeder, Aaron, and Dementer.

**II. Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

3

disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof

---

1  If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue. (*Id.*) In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

4

"must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where

5

prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id*. at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id*. (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id*. at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process

6

and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id*. at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies

7

regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

8

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

### IV. Analysis

Defendants argue that Bell never properly exhausted his grievance remedies before he filed this lawsuit. As noted in the introduction, Bell filed two grievances. One involved his request for a transfer away from his cellmate, and the other one involved the lack of emergency call buttons in the prison cells. Both grievances were rejected at each step of the grievance process. Bell argues that he did enough to place Defendants on notice of the issues that he raised in his complaint and that a genuine issue of material fact exists on whether he exhausted his administrative grievances.

**1. Grievance LMF-20-06-0676-28e**

Bell's Step I grievance stated:

---

[2] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

9

> Date Received at Step I  6/4/2020   Grievance Identifier: LMF|20|06|01076|28E
>
> Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.
>
> Name (print first, last): BELL, DENZIL   Number: 770562   Institution: LMF   Lock Number: A-243   Date of Incident: 5-27-20, 5-30-20   Today's Date: 6-2-20
>
> What attempt did you make to resolve this issue prior to writing this grievance? On what date? If none, explain why. ON 5-9-20 I SENT A KITE TO P.C. SALO. ON 5-13-20 I SENT A KITE TO THE WARDEN. ON 5-27-20 at 8:15 AM I PUT ANOTHER KITE IN TO SALO — SAME DAY @ 19:15 I TALKED TO C.O. AARON AFTER MY SHOWER ON 5-30-20 I TALKED TO DEMSNIER DURING DAYROOM. ON ALL THESE ATTEMPTS I ASKED TO BE MOVED CELLS & EXPLAINED THE
>
> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted SITUATION to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.
>
> ON ALL THE ABOVE OCCASIONS I ATTEMPTED TO BE MOVED INTO A DIFFERENT CELL WITH A DIFFERENT CELLMATE, THIS WAS DUE TO THE FACT THAT WE ALREADY HAD A PHYSICAL FIGHT (ME AND EDWARDS #405149) ON 5-4-20 IN WHICH I BROKE MY HAND. I TOLD ALL STAFF ON THAT OCCASION I BROKE IT PUNCHING THE WALL BUT NONE OF THEM BELIEVED ME AARON, FIELDING, BRENNAN — EVEN ADW SCHRAM TOLD ME THIS. EDWARDS TOLD ME HE ALSO ASKED TO BE MOVED, I CANNOT CONFIRM THIS AS I DID NOT WITNESS. I DID WITNESS EDWARDS PUT IN A KITE EXPLAINING ALL THIS AND THREATENING ME, THIS KITE WAS TO THE COUNSELOR AND HE PUT IT IN AT BREAKFAST TRAY RETURN ON 5-30-20 ONE OF US SHOULD HAVE BEEN MOVED A LONG TIME AGO TO ANOTHER CELL
>
> Grievant's Signature

(ECF No. 25-3, PageID.118.) This grievance was rejected as untimely at Step I. (*Id.*, PageID.119.) The rejection was upheld at Step II and at Step III. (*Id.*, PageID.115, 117.) The Supreme Court held in *Woodford*, 548 U.S. at 92-93, that the PLRA exhaustion requirement requires "proper exhaustion."

"Proper exhaustion" means that the plaintiff complied with the administrative agency's deadlines and "critical procedural rules," such as time limits for filing grievances. *Id.* at 90-95. Proper exhaustion is a precondition to any suit challenging prison conditions. *Id.* Therefore, following *Woodford,* if a plaintiff's grievance was not filed in a timely manner pursuant to the state's administrative rules, the plaintiff has not properly exhausted his administrative remedies and the claim is barred.

MDOC Policy Directive 03.02.120(Q) provides that a grievant shall attempt to resolve an issue with the staff member involved within two days after becoming aware of the issue and then file a Step I grievance within five days after making that attempt to resolve the issue. The policy states:

> Q. Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue is believed to fall within the jurisdiction of Internal Affairs. If the issue is not resolved, the grievant may file a Step I grievance. The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with appropriate staff.

(ECF No. 25-2, PageID.106.)

Bell makes one argument asserting that LMF-20-06-0676-28e exhausted his administrative remedies. Bell argues that the MDOC decided this grievance on the merits of the issue he asserted in the grievance. That clearly is not true. The Step I grievance was rejected as explained below:

**Michigan Department of Corrections**
**GRIEVANCE REJECTION LETTER**

DATE: 6/4/2020

TO: BELL   770562   LOCATION: LMF   A-243

FROM: Grievance Coordinator: J. Lancour

SUBJECT: Receipt/Rejection/Denial for Step I Grievance

Your Step I grievance regarding   grievance untimely
was received in this office on   6/4/2020   and was rejected due to the following reason:
The Step I Grievance Office staff have carefully examined the content of your Step I grievance. This examination reveals that you have exceeded your time limits in filing a grievance on issue(s) that concern you, and at the same time provided no reasonable circumstance beyond your control that would have prevented you from filing this grievance in a timely fashion. This office is returing you grievance to you without investigation for these reasons. If you have further questions consult OP 03.02.130, which is available in the institutional library. Grievance denied at first step.
Any future references to this grievance should utilize this identifier:   LMF / 2020 / 06 / 0676 / 28E

(*Id.*, PageID.119.) The rejection was upheld at Step II and Step III. (Id. at 115,117).

The parties have failed to address the reasons for the rejection of this grievance. The Step I response fails to state why the grievance was untimely. The Court can only speculate. The MDOC rejected the grievance as untimely. It appears that the MDOC focused only on the first date mentioned – May 9, 2020 – and ignored the May 30, 2020, date. However, based only on the May 30, 2020 kite date, the grievance would be considered timely under policy. Here, Bell was requesting protection from his cellmate based upon the prior assault and continued threats made by his cellmate. His request for protection did not start *and end* on May 9, 2020. At the very least this was a continuing violation. The parties have simply not addressed this issue. In the opinion of the undersigned, there exists a genuine issue of material fact whether Bell's grievance was timely or whether the MDOC properly rejected the grievance.

Defendants concede that Bell named Schroeder, Aaron, Salo, and Dementer in his Step I grievance. (ECF No. 25, PageID.25.) Defendants, however, argue that Plaintiff failed to name Becks, Fielding, Brennan, or Schram in grievance <u>LMF-20-06-0676-28e</u>. (*Id.*) As explained above, the Sixth Circuit recognized in *Reed-Bey* that the MDOC grievance procedures require a prisoner to specifically name the person being grieved to allow the MDOC to address the grievance with the appropriate official. An MDOC inmate fails to properly exhaust his grievance against officials *not* named in a grievance, except for instances where the MDOC waives that requirement. The Sixth Circuit explained:

> [Plaintiff's] argument that this grievance was being decided on the merits is significant because in *Reed-Bey v. Pramstaller*, 603 F.3d 322,

> 325 (6th Cir. 2010), we held that "[w]hen prison officials decline to enforce their own procedural requirements," such as the requirement to identify the names of those involved in the issue being grieved, and instead "opt to consider otherwise-defaulted claims on the merits, so as a general rule will we." However, *Reed-Bey* does not stretch to meet the facts of this case.
>
> In *Reed-Bey*, the inmate failed to name a single individual in his grievance, and it would have thus been clear to prison officials when they addressed the merits of the grievance that they were waiving their own procedural requirement to include the names of those involved in the grievance. *See id.* at 324. But here, [Plaintiff] listed two people at step I of the grievance, Bierstetel and Havelka. Accordingly, prison officials would naturally assume that [Plaintiff] complied with the requirement to name those involved, and defendants cannot be said to have waived the exhaustion defense when they had no way of knowing that they would be the subject of a later lawsuit. *See Luther v. White*, No. 5:17-CV-138-TBR, 2019 WL 511795, at *8 (W.D. Ky. Feb. 8, 2019) (declining to apply *Reed-Bey* where inmate named a specific individual in grievance but not later defendants to the lawsuit).

*Brown v. McCullick*, No. 18-2226, 2019 WL 5436159, at *3 (6th Cir. Apr. 23, 2019). Although Bell named Defendants Becks, Fielding, Brennan, and Schram in the body of his grievance, he only stated that these Defendants did not believe him after he told them that he injured his hand when he punched the wall. Bell is not asserting a claim based upon what he thought Defendants Becks, Fielding, Brennan, and Schram believed when he told them that he had punched the wall. Accordingly, it is the opinion of the undersigned that Bell failed to properly exhaust his administrative remedies against Defendants Becks, Fielding, Brennan, and Schram as to any claim that he asserted in his complaint.

### 2. Grievance LMF-20-06-0677-27b

Bell's Step I grievance stated:

> Date Received at Step I: 6/4/2020   Grievance Identifier: LMF 2006 0677 27B
>
> | Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
> |---|---|---|---|---|---|
> | BELL, DENZIL | 770562 | LMF | 770562 | 5-4-20 / 5-31-20 | 6-2-20 |
>
> What attempt did you make to resolve this issue prior to writing this grievance? On what date? If none, explain why. NO ACTION COULD BE TAKEN ON MY PART
>
> THERE ARE NO EMERGENCY CALL BUTTONS IN THE CELLS AT THIS FACILITY. THIS IS A HAZARD WHICH HAS EXTREMELY NEGATIVELY AFFECTED ME ON 2 OCCASIONS. ON THE FIRST (5-4-20) I WAS ENGAGED IN A PHYSICAL ALTERCATION WITH EDWARDS #405149 IN WHICH I BROKE A BONE IN MY HAND. ON THE SECOND (5-31-20) I WAS PHYSICALLY MUTILATED BY EDWARDS.
>
> IN (USC 1983) FEDERAL LAW WAS PUT IN PLACE REQUIRING EMERGENCY CALL BUTTONS IN ALL AREAS A PRISONER IS LOCKED IN FOR MORE THAN AN HOUR. THIS LAW WAS ENACTED 37 YEARS AGO WELL BEFORE THIS PRISON WAS BUILT.
>
> Denzil Bell
> Grievant's Signature

(ECF No. 25-3, PageID.123.) The grievance was rejected at Step I because Bell raised

issues regarding content and policy. The grievance response stated:

> Grievance Identifier Number: LMF-2006-0677-27B
>
> Your grievance is being rejected because you are grieving the content of policy and procedure, which is a non-grievable issue according PD 03.02.130. LMF OP 04.05.120-B staff are required to perform irregular visual checks at intervals no greater in length than thirty minutes in segregation units and sixty minutes in general population. LMF OP 03.04.125 Medical Emergencies states in paragraph A that staff are trained to properly respond to medical emergencies. Your grievance has been rejected due to departmental policy not requiring emergency buttons in cells.

(*Id.*, PageID.125.) The rejection was upheld at Step II and at Step III. (*Id.*,

PageID.120, 122.)

14

The subject matter of this grievance – that emergency call buttons were not in the prison cells – is not an issue raised in the complaint against Defendants. Further, Bell did not name any of the Defendants in the grievance. Even if Bell properly named Defendants in this grievance, Bell's grievance was rejected as non-grievable. Therefore, the subject matter of the grievance did not have to be exhausted in the grievance process.

More importantly, however, Bell is not raising claims against Defendants regarding the lack of an emergency call button in the prison cells, and this grievance is not relevant to the issues he asserts in his complaint. In the opinion of the undersigned, this grievance could not have exhausted any issues presented in the complaint for two reasons. First, Grievance LMF-20-06-0677-27b raised a non-grievable issue that did not need to be exhausted through the grievance procedures. Second, most importantly, the issue asserted in the grievance is not relevant to the issues asserted against Defendants in the complaint. In other words, although Bell did not have an available grievance remedy to exhaust the issue of emergency call buttons, that issue is not the subject matter of his complaint.

### V. Recommendation

The undersigned respectfully recommends that this Court grant in part and deny in part Defendants' motion for summary judgment. It is recommended that the Court grant the motion in part by dismissing Defendants Becks, Fielding, Brennan, and Schram without prejudice because of Bell's failure to properly exhaust any claim he asserts in his complaint against these Defendants.

It is recommended that the Court deny Defendants Schroeder, Aaron, Salo, and Dementer's motion for summary judgment based upon the concession that Bell named these Defendants in grievance LMF-20-06-0676-28e and because a genuine issue of material fact exists regarding whether the MDOC properly rejected that grievance as untimely.

If the Court accepts this recommendation only Bell's claims against Defendants Schroeder, Aaron, Salo, and Dementer would remain.

Dated:   January 30, 2024                    /s/ *Maarten Vermaat*
                                             MAARTEN VERMAAT
                                             U. S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).